IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KENT BRAMLETT,**<br>　　　　　**Plaintiff,**<br><br>　　　v.<br><br>**UNITED STATES DEPARTMENT OF THE TREASURY, UNITED STATES BUREAU OF THE MINT, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES BUREAU OF CUSTOMS AND BORDER PROTECTION SERVICE, STEVEN MNUCHIN, DAVID MOTL, JOHN F. KELLY, KEVIN K. MCALEENAN, UNITED STATES OF AMERICA, and JOHN DOES 1-10,**<br>　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 16-257** |
| **PORTLAND MINT and RONNIE SHAHAR,**<br>　　　　　**Plaintiffs,**<br><br>　　　v.<br><br>**UNITED STATES DEPARTMENT OF THE TREASURY, UNITED STATES BUREAU OF THE MINT, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES BUREAU OF CUSTOMS AND BORDER PROTECTION SERVICE, STEVEN MNUCHIN, DAVID MOTL, JOHN F. KELLY, KEVIN K. MCALEENAN, UNITED STATES OF AMERICA and JOHN DOES 1-10,**<br>　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 16-270** |

## **MEMORANDUM OPINION**

Plaintiffs Kent Bramlett, the Portland Mint, and Ronnie Shahar have brought claims alleging that they were improperly prevented from submitting several shipments of bent and

broken coins to the U.S. Mint's Mutilated Coin Redemption Program prior to the Mint's suspension of the entire program in late 2015.[1]  Plaintiffs assert that the Mint refused to accept two shipments of coins, and that another four coin shipments were unlawfully detained by customs officials for several months, thereby preventing Plaintiffs from submitting those coins before the Coin Redemption Program was suspended.  In pursuit of either an order requiring the Mint to accept their coins or an award of damages to compensate them for the lost opportunity to submit the coins, Plaintiffs have filed suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*; the Fourth and Fifth Amendments to the U.S. Constitution; 42 U.S.C. § 1983; and the Mandamus and Venue Act, 28 U.S.C. 1361, against the United States, the U.S. Department of the Treasury, the U.S. Department of Homeland Security, the U.S. Mint, the U.S. Bureau of Border and Customs Protection Service, the leaders of all four agencies, and the unnamed officers who caused the detention of the coins.  Defendants have filed motions to dismiss all of Plaintiffs' claims.  Defendants' motions shall be granted.

## I. BACKGROUND

### A. Mutilated Coin Redemption Program

For over 100 years, the United States Mint (the "Mint") has maintained a Mutilated Coin Redemption Program (the "Coin Redemption Program") by which broken or bent U.S. coins may be submitted to the Mint in exchange for payment.  From 1999 until the program's suspension in November 2015, the Mint accepted broken and bent coins for redemption based on weight and denomination.  *See* 31 C.F.R. § 100.11.  The Coin Redemption Program is funded by the United States Mint Public Enterprise Fund ("PEF"), which is fueled by receipts from Mint

---

[1] Bramlett's case is Civil Action No. 16-257.  Portland Mint's case is Civil Action No. 16-270.  Although these cases have not been consolidated, the parties are represented by the same counsel and have filed identical motions and briefs in both matters, and the legal issues presented by Plaintiffs' claims are the same.

operations and any borrowing which the Secretary of the Treasury deems necessary to operate the Mint.  *See* 31 U.S.C. § 5136.

In light of concerns about the submission of counterfeit coins, the Mint temporarily suspended the Coin Redemption Program in November 2015.  One year later, the Mint issued a Notice requesting comment on the development of new regulations to govern the program with additional anti-counterfeiting safeguards.  The Notice indicated that the program will be resumed once the new regulations are established, which has not yet occurred.

### B.  Plaintiffs' Rejected and Detained Shipments

Plaintiffs have been submitting mutilated coins gathered from sources in China and the United States to the Coin Redemption Program since 2009.  Until late 2014, each submission proceeded smoothly, with Plaintiffs submitting broken and bent coins to either the Mint in Philadelphia or to a designated smelter in Iowa and receiving payment based on the weight and denomination of coins submitted.  Beginning in late 2014, however, Plaintiffs began to incur difficulties with their submissions, and throughout 2015 several of their shipments of coins from China were detained upon arrival in the United States by U.S. Customs and Border Protection (CBP).

Bramlett was the first Plaintiff to face a barrier to mutilated coin redemption.  In November 2014, he submitted a large shipment of coins to the Mint in Philadelphia.  In early 2015, he was informed that the processing of his payment for that shipment had been delayed by the Department of Homeland Security pending "determination of the source of the coins."

While Bramlett's November 2014 shipment was awaiting redemption payment, Portland Mint attempted to arrange the submission of large shipments of coins that were imported on February 12, 2015 and March 13, 2015.  Although Portland Mint had previously submitted

several redemptions and had been invited to continue submitting coins, Plaintiffs allege that the Mint's communication regarding submission logistics became unclear and evasive in early 2015, ultimately preventing the submission of these early 2015 shipments.

Despite their difficulties with submitting coins in late 2014 and early 2015, Plaintiffs continued to import mutilated coins with the intention of submitting them to the Mint. Beginning in April 2015, however, CBP began to detain Plaintiffs' shipments at the border. The first detention occurred when CBP held a shipment imported by Portland Mint in Seattle on April 19, 2015 "for further examination." Two weeks later, Portland Mint's next shipment was also detained in Seattle, again with the designation "held for examination." The following week, CBP officers in Los Angeles detained a shipment imported by Bramlett citing "possible admissibility issues (counterfeit coins)." Finally, a third shipment of Portland Mint's was detained, this time in Tacoma, again to be "held for further examination." Portland Mint filed a protest of the detention of the May 1, 2015 shipment, which was denied on the grounds that the coins were "not deemed excluded; issue non-protestable. 19 U.S.C. § 1499 does not apply based on determination of admissibility being vested in an agency other than CBP." When the Coin Redemption program was suspended in November 2015, all of the detained shipments remained in CBP custody.

Plaintiffs' original Complaints sought payment for the November 2014 shipment (to Bramlett), the release of the detained shipments, and a resumption of the Coin Redemption Program. In September 2016, the parties reached an agreement whereby Bramlett was paid for the November 2014 shipment, and the shipments in CBP custody were released to Plaintiffs. Plaintiffs have been unable to submit those coins (or the February and March 2015 shipments) for redemption, however, due to the ongoing suspension of the Coin Redemption Program. They

filed an Amended Complaint on October 31, 2016, seeking a resumption of the program or compensation for the missed opportunity to submit their coins.

### C. The Defendants and Claims

Plaintiffs have named four groups of Defendants: (1) the United States; (2) the U.S. Department of the Treasury, the U.S. Bureau of the Mint, the U.S. Department of Homeland Security, and the U.S. Bureau of Customs and Border Protection Service (together, the "Agencies"); (3) the officials in charge of each of the Agencies – Secretary of the Treasury Steven Mnuchin, Acting Principal Deputy Director of the U.S. Mint David Motl, Secretary of Homeland Security John F. Kelly, and Acting Commissioner of U.S. Customs and Border Protection Kevin K. McAleenan – in their official capacities (together, the "Officials");[2] and (4) John Does 1-10, unnamed persons sued in their individual capacities allegedly responsible for causing the investigation and detention of Plaintiffs' coin shipments.

Plaintiffs' Amended Complaints contain five counts. Count I is a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, challenging the suspension of the Coin Redemption Program and the refusal of Plaintiffs' submissions on both statutory and constitutional grounds. Counts II and III are constitutional claims under the Fourth and Fifth Amendments, respectively, arising from CBP's detention of Plaintiffs' coins. Count IV is a claim under 42 U.S.C. § 1983 against the Officials and John Does 1-10, also arising from the detention of Plaintiffs' coins. Count V is a claim under the Mandamus and Venue Act, 28 U.S.C. § 1361, seeking a writ declaring that Plaintiffs' constitutional rights have been violated and awarding compensation for the damages caused by the detention of their coins and their

---

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the successors in office to the officials originally sued in their official capacities have been automatically substituted as parties in this case.

subsequent inability to submit them for redemption. Except for Count IV, all of the claims are asserted against all Defendants.

## II.     LEGAL STANDARD

Defendants' motions do not specify whether they were filed under Rule 12(b)(1) or Rule 12(b)(6), but the motions present arguments concerning both subject-matter jurisdiction and failure to state claims. In evaluating a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "a court must first determine whether the movant presents a facial or factual attack." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action Litig.*, 678 F.3d 235, 243 (3d Cir. 2012). Defendants' Rule 12(b)(1) arguments concern subject-matter jurisdiction and rely solely on the allegations in the Amended Complaints. They are, thus, facial challenges, which are governed by the same standard of review as a motion under Rule 12(b)(6). *Id.* Accordingly, the motions will be analyzed based on the facts set forth in the Amended Complaints construed in the light most favorable to Plaintiffs. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290 (3d Cir. 2014) (in considering a motion to dismiss under Rule 12(b)(6), a court must construe the facts and draw all reasonable inferences in the light most favorable to the plaintiff).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In light of *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (internal quotation marks and brackets omitted). A plaintiff need not show that success on his or her claims is probable, but

must assert "'enough facts to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element in a claim. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (2007)). However, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (internal quotation marks and citations omitted).

## III. DISCUSSION

Defendants argue that sovereign immunity, which bars suits against the United States and its agencies absent a waiver of that immunity, precludes all of Plaintiffs' claims against the United States, the Agencies, and the Officials. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). They also argue that the claims against John Does 1-10 have not been supported with sufficient factual allegations to survive a motion to dismiss. Plaintiffs respond that the APA provides for a waiver of sovereign immunity for their APA claims, and that they have provided sufficient factual support for all of their claims.[3]

### A. Administrative Procedure Act

The APA provides a mechanism for judicial review of agency action, and thus "waives federal sovereign immunity in certain circumstances to allow equitable relief from agency action or inaction." *Am. Disabled for Attendant Programs Today v. U.S. Dep't Hous. & Urban Dev.*, 170 F.3d 381, 383 (3d Cir. 1999). Since it provides only for an action "seeking relief other than

---

[3] It is not clear from Plaintiffs' briefs whether they have conceded that sovereign immunity bars their non-APA claims against the United States, the Agencies, and the Officials.

money damages," 5 U.S.C. § 702, "[t]he APA does not offer any monetary award." *Cohen v. United States*, 650 F.3d 717, 735 (D.C. Cir. 2011).

Plaintiffs' APA claim proceeds along two separate theories. First, they argue that suspending the Coin Redemption Program constituted an unlawful withholding or unreasonable delay of agency action, and that the program (or at least redemption of Plaintiffs' coins) should be compelled to proceed under 5 U.S.C. § 706(1). Second, they argue that the refusal of Plaintiffs' shipments violated the Due Process Clause of the Fifth Amendment, and thus must held unlawful and set aside under 5 U.S.C. § 706(2)(B).

### 1. Unlawful Withholding or Unreasonable Delay of Agency Action

Turning first to Plaintiffs' claim that the agency has unlawfully withheld or unreasonably delayed operating the Coin Redemption Program or accepting Plaintiffs' coins, Defendants argue that this decision is "committed to agency discretion by law," and is thus outside the scope of the APA. This argument invokes an exception to the otherwise broad presumption of judicial review of agency action created by the APA. *See* 5 U.S.C. § 701(a)(2). The exception is narrow: An action is committed to agency discretion by law only when the statute giving rise to the agency's authority is "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). In analyzing this exception, the Third Circuit has directed courts to consider whether:

1) the action involves broad discretion, not just the limited discretion inherent in every agency action;

2) the action is the product of political, military, economic, or managerial choices that are not readily subject to judicial review; and

3) the action does not involve charges that the agency lacked jurisdiction, that the decision was motivated by impermissible influences such as bribery or fraud, or that the decision violates a constitutional, statutory, or regulatory command.

*Raymond Proffitt Found. v. U.S. Army Corps of Eng'rs*, 343 F.3d 199, 205 (3d Cir. 2003) (internal quotation marks omitted).

### a.  Action Involves Broad Agency Discretion

As to the first factor, Defendants argue that the Mint has broad discretion to suspend the Coin Redemption Program because it is financed by PEF funds, which may be spent at the Secretary of the Treasury's discretion. In support of this position, they point to the Supreme Court's holding in *Lincoln v. Vigil,* 508 U.S. 182 (1993), that when a program is funded through a lump-sum allocation of funds, "a clear inference arises that [Congress] does not intend to impose legally binding restrictions" and that decisions regarding the use of those funds are "committed to agency discretion by law." *Id.* at 192-93. In *Lincoln*, the Court held that the Indian Health Service's decision to discontinue a particular public health program was not reviewable under the APA because the agency's lump-sum allocation for Indian health programs required only that the funds be used for the broad mandate to provide health care to Indian people, and did not require the maintenance of any particular program. *Id.* at 194. The broad discretion to expend lump-sum appropriations within the general statutory guidelines includes both the discretion to create new programs as well as terminate existing ones. *See id.* ("The decision to terminate the Program was committed to the Service's discretion.")

The PEF is subject to even broader agency discretion than the lump-sum allocation at issue in *Lincoln*. The PEF may be used for "operations and programs of the United States Mint that the Secretary of the Treasury determines, *in the Secretary's sole discretion*, to be ordinary and reasonable incidents of Mint operations and programs." 31 U.S.C. § 5136 (emphasis added). In light of *Lincoln*, the broad grant of discretion to use a self-sustaining fund to implement "ordinary and reasonable" programs provides ample basis for concluding that the suspension or

termination of the programs supported by the PEF – including the Coin Redemption Program – is committed to agency discretion by law.

### b. Action Involves the Protection of Economic Security

Turning to the second APA-exception factor – whether the decision involved political, military, economic, or managerial choices – the Mint suspended the Program "to assess the security of the program and develop additional safeguards to enhance the integrity of the acceptance and processing of mutilated coinage." U.S. Mint Notice, 81 Fed. Reg. 75922-01 (Nov. 1, 2016). Plaintiffs do not dispute that this was the reason offered by the Mint for suspending the program, although they question the soundness of the decision and allege that it was based on faulty information. Even if Plaintiffs are correct that the decision was based on inaccurate information or an error in judgment, neither of those scenarios would change the fact that the decision concerned economic security. Particularly given that the Mint is explicitly vested with the discretion to take actions to protect the integrity of U.S. currency, the economic security purpose of the Mint's decision further points to the conclusion that the decision to suspend the Coin Redemption Program was committed to the agency's discretion by law.

### c. Allegations of Impermissible Influence

Finally, with respect to the third factor, the Amended Complaints do not identify any specific improper influence or lack of jurisdiction related to the Mint's suspension of the Coin Redemption Program.[4] Without specific factual allegations of impermissible influence, such as fraud or bribery, the third prong of the agency-discretion analysis does not disturb the conclusion that the decision to suspend the program is committed to agency discretion by law.

In sum, the decision to suspend the program fell within the Mint's broad discretion to operate programs from the PEF, the decision involved questions of economic security, and there

---

[4] Plaintiffs' constitutional challenge under the APA is considered separately below.

are no specific allegations of improper influence. Accordingly, the operation of the Coin Redemption Program was committed to agency discretion by law and cannot be reviewed as an action unlawfully withheld or unreasonably delayed under the APA.

### 2. Constitutional Challenge

When a decision is committed to agency discretion by law and thus not reviewable as an unlawful or unreasonable agency action under the APA, a plaintiff may still invoke the APA as the basis for a constitutional challenge to the action unless constitutional review is expressly precluded by statute. *Webster v. Doe*, 486 U.S. 592, 603 (1988). Defendants have not argued, nor would the relevant statutes at issue here support the argument, that the Coin Redemption Program is immune from constitutional review.

Turning to the merits of Plaintiffs' due process challenge to the Mint's refusal to accept their coins, Plaintiffs must first establish that they have a life, liberty, or property interest that is protected by the Due Process Clause. *Baraka v. McGreevey*, 481 F.3d 187, 204 (3d Cir. 2007). Although Plaintiffs have not specified what type of interest was implicated by the alleged denial of due process, the fact that they seek restoration of an economic benefit leads inexorably to the conclusion that their due process claim is based on a property interest. A property interest is defined "by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Such an interest requires more than "an abstract need or desire" for the benefit; instead, a plaintiff must have "a legitimate claim of entitlement to it." *Id.*

Plaintiffs have not specified an independent source of law which establishes that they have a constitutionally protected property interest in submitting coins into the Coin Redemption

Program, and the statutes and regulations surrounding the program do not make such an interest apparent. The statutes concern only the general mandate that the Mint manage the melting of coins and protect the security of currency, and contain no reference to either the Coin Redemption Program or any other specific means of submitting coins to the Mint to be melted. *See* 31 U.S.C. §§ 321, 5111, and 5120. The regulation governing the program merely articulates the submission protocol and payment rate for redemptions. *See* 31 C.F.R. § 100.11. Even if this regulation creates a property interest in payment for coins submitted to the Mint, it does not create an entitlement to submit coins in the first place. Since neither the statutes nor regulations governing the Coin Redemption Program establish an entitlement to submit coins, and Plaintiffs have not identified any other regulation or statute which establishes such a right, Plaintiffs have not identified a constitutionally protected property interest and their due process challenge under the APA cannot proceed.

Since Plaintiffs have not plausibly alleged a constitutional violation arising from the suspension of the Coin Redemption Program, and the decision to suspend the program was committed to agency discretion by law, both strands of Plaintiffs' APA claims fall outside the scope of APA review. The Court therefore lacks subject-matter jurisdiction over Count I of the Amended Complaints, and that count shall be dismissed.[5]

### B. Fourth and Fifth Amendment Claims

The analysis of Plaintiffs' Fourth and Fifth Amendment claims differs with respect to each group of Defendants – John Does 1-10, the Officials, and the United States and its Agencies – so each group of Defendants' grounds for seeking summary judgment shall be considered separately.

---

[5] Since the challenged agency action is not subject to review under the APA, Count I must also be dismissed under Rule 12(b)(6) for failure to state a claim.

### 1. John Does 1-10

The Fourth and Fifth Amendment claims against John Does 1-10 are based on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in which the Supreme Court recognized an implied private right of action against federal officials for a violation of the Fourth Amendment.[6] This implied right of action has since been extended to the Due Process Clause of the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228, 230 (1979). Defendants argue that these claims lack sufficient factual support to survive a motion to dismiss, emphasizing that an official may be held personally liable under *Bivens* only "for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A plaintiff asserting a *Bivens* claim must therefore provide plausible factual support for allegations that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. Although the necessary elements to establish a *Bivens* claim "vary with the constitutional provision at issue," *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012), "in order to prevail in any *Bivens* action, [plaintiffs] must both prove a deliberate abuse of governmental power rather than mere negligence, and overcome the defense of qualified immunity." *Schweiker v. Chilicky*, 487 U.S. 412, 447 (1988) (internal citations omitted).

The Amended Complaints' allegations about the John Doe Defendants' actions are speculative and conclusory. While they do contain factual allegations about several customs officers, none of those officers are named as Defendants. Instead, Plaintiffs states broadly that the unnamed individuals "are believed to be responsible for the violations of Plaintiffs' Civil Rights" by "knowingly, recklessly or carelessly relying on false information or causing false

---

[6] Defendants argue that Plaintiffs have failed to plead a *Bivens* claim because the Amended Complaints do not specifically cite *Bivens*. But the Amended Complaints contain constitutional claims for damages against federal officers in their individual capacities, which are necessarily based on *Bivens*, and Defendants have identified no legal authority that requires a plaintiff to identify the case law supporting a claim in a pleading.

information to be propagated and continued" which allegedly resulted in the detention of Plaintiffs' coins  Since these allegations fall far short of the specific factual support necessary to support a *Bivens* claim under *Iqbal*, Counts II and III against John Does 1-10 shall be dismissed.

### 2. Official Defendants

*Bivens* claims are not available against federal officials sued in their official capacities. *See Debrew v. Auman*, 354 F. App'x 639, 641 (3d Cir. 2009) (citing *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007)).  Since the Officials have been sued only in their official capacities, Counts II and III against the Officials must be dismissed.

### 3. The United States and the Agencies

The United States and the Agencies have asserted sovereign immunity from the Fourth and Fifth Amendments claims against them, noting that it is a "well-settled principle that sovereign immunity bars claims against federal agencies for *damages* caused by constitutional violations."  *Clayton v. Dist. of Columbia*, 931 F. Supp. 2d 192, 201 (D.D.C. 2013) (citing *Meyer*, 510 U.S. at 486).  Plaintiffs respond that their claims do not seek money damages, but rather aim for equitable relief.  In distinguishing money damages from equitable relief, the Supreme Court has described an action for damages as one "intended to provide a victim with monetary compensation for an injury to his person, property, or reputation," while an action for equitable relief aims not to compensate the victim, but rather to "give the plaintiff the very thing to which he was entitled."  *Bowen v. Massachusetts*, 487 U.S. 879, 893, 895 (1988) (internal quotation marks omitted).

Plaintiffs' contention that their Fourth and Fifth Amendment claims do not seek monetary damages is undermined by the specific relief pled in the Amended Complaints under both of

these claims: "compensatory damages for the financial harm caused by defendants' conduct" and "interest on the compensation for the coin shipments from the date of seizure and awarding money damages for all costs and harm occasioned by defendants' conduct." This formal request for compensatory damages matches with the practical reality of Plaintiffs' claims, since the equitable relief that would flow from these claims – a release of the coins to Plaintiffs – has already occurred. At this juncture, the remaining relief that Plaintiffs seek from the allegedly unconstitutional detention is compensation for the lost opportunity to submit their coins to the Coin Redemption Program – a paradigmatic example of money damages as described in *Bowen*. Since the United States and the Agencies have not waived sovereign immunity with respect to constitutional claims for money damages, Counts II and III against the United States and the Agencies must be dismissed.

### C. Section 1983

Plaintiffs have asserted a claim against the Officials and John Does 1-10 under 42 U.S.C. § 1983. Section 1983, however, provides a cause of action for constitutional violations only when the violations occur under color of *state* law and therefore "does not apply to federal actors." *Polsky v. United States*, 844 F.3d 170, 173 (3d Cir. 2016). Since Plaintiffs have alleged constitutional violations against federal actors, Section 1983 does not apply and Defendants' motion to dismiss Count IV shall be granted.

### D. Mandamus and Venue Act

Finally, Plaintiffs seek a writ pursuant to the Mandamus and Venue Act, 28 U.S.C. § 1361. Such a writ is discretionary, and may issue only if a plaintiff demonstrates "no other adequate means to attain the relief he desires" and that the "right to issuance of the writ is clear

and indisputable." *Cheney v. U.S. Dist. Court of Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted).

Plaintiffs' claims under the Mandamus and Venue Act shall be dismissed for two reasons. First, the relief they seek under this count – "the return of the shipments to plaintiff, or . . . payment for the value of the coin shipments" – has already substantially occurred, since the shipments were returned to Plaintiffs prior to the filing of the Amended Complaints. Second, to the extent that these claims are not moot, Plaintiffs have presented no argument addressing this claim and thus have not proffered a viable legal basis for an entitlement to the writ. Count V shall therefore be dismissed.

### E. Leave to Amend

Plaintiffs have requested leave to amend their pleadings, and upon granting a motion to dismiss, "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Amendment of several of Plaintiffs' claims would be futile. Their claims under the APA, the Mandamus and Venue Act, and Section 1983 face insurmountable legal barriers. The APA claims fail because the agency action challenged by Plaintiffs is committed to agency discretion by law and is thus not judicially reviewable, the Section 1983 claims fail because Section 1983 does not apply to actions under color of federal law, and the Mandamus and Venue Act claims fail from a lack of legal support for the writ sought by Plaintiffs. The Fourth and Fifth Amendment claims against the United States, the Agencies, and the Officials are also legally untenable, since they are barred by sovereign immunity. Since these deficiencies cannot be cured by additional factual averments, Counts I, IV, and V in their entirety, and Counts II and III against the United States, the Agencies, and the Officials shall be dismissed with prejudice.

Plaintiffs' Fourth and Fifth Amendment claims against John Does 1-10, on the other hand, fail due to insufficient factual support, which typically warrants granting "a reasonable opportunity to cure the defect." *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Defendants argue that even if Plaintiffs could amend their pleadings to provide enough facts to move forward, venue would be improper in this Court and the claims would be barred by qualified immunity. Given that the current individual defendants are unnamed, Plaintiffs may also face difficulty with service of process if they do not name any specific officers as defendants. But these barriers to successful amendment are hypothetical at this juncture. It would be premature to render a decision on these legal issues or to deny Plaintiffs an opportunity to cure the factual deficiencies in their constitutional claims against individual officers based on conjecture about fact-specific legal barriers that those claims might face. Plaintiffs' Fourth and Fifth Amendment claims against John Does 1-10 in their individual capacities shall therefore be dismissed without prejudice, and Plaintiffs will be granted leave to file Second Amended Complaints no later than fourteen days from the date of this Opinion.

An order follows.

Dated: March 20, 2017

                                         **BY THE COURT:**

                                         /s/Wendy Beetlestone, J.
                                         _____
                                         **WENDY BEETLESTONE, J.**